■ In the Matter of GARY L. REYNOLDS, Appellant, v GEORGIA A. OSTER, Respondent. [596 NYS2d 545] —Harvey, J. Appeal from an order of the Family Court of Albany County (Breslin, J.), entered July 18, 1991, which, *inter alia,* partially granted respondent's cross application, in a proceeding pursuant to Family Court Act article 4, to modify petitioner's child support obligation.

The parties to this proceeding married in 1970 and have two children, Dawn (born April 6, 1971) and Ryan (born June 29, 1977). In March 1980, the parties divorced pursuant to a decree from Nebraska. Pursuant to this divorce decree, petitioner was ordered to, *inter alia,* pay child support to respondent in the amount of $187.50 per month per child. Thereafter, in 1983, petitioner apparently requested a modification of this amount and he was subsequently ordered to pay $140 per month per child, with an abatement for the periods when petitioner had the children during extended vacations. At some point thereafter, the 1983 Nebraska order was registered

in Albany County, where petitioner now resides. Orders were also entered in 1986 and 1988 but these essentially only concerned the issue of arrears and a wage deduction order; no extensive inquiry concerning the basic amount of child support was conducted (see, Giambattista v Giambattista, 154 AD2d 920, 921).

In May 1989, petitioner petitioned for a modification of child support seeking, inter alia, a declaration that Dawn was emancipated and an abatement of support for the time Ryan was on extended visits with petitioner from Nebraska. In August 1989 respondent cross-petitioned for an upward modification of support alleging a change in circumstances and filed a violation petition alleging that petitioner willfully disobeyed a prior court order by failing to make support payments from June 1989 through August 1989. A hearing was held before a Hearing Examiner who found, inter alia, that Dawn was emancipated, that a change in circumstances warranted an upward modification of petitioner's support obligation, that petitioner willfully disobeyed a prior court order and ordered petitioner to, inter alia, pay certain support as well as respondent's counsel fees. The parties both filed objections to the Hearing Examiner's order. Family Court basically denied all objections except for its determination that petitioner was only entitled to a credit for child support owed during the time period Dawn was emancipated from the time the petition was filed. Petitioner appeals.

Initially, we address petitioner's argument that, with respect to Dawn's emancipation, he should have been granted an abatement from the time Dawn was actually emancipated as opposed to simply from the time the petition was filed. In denying petitioner's request, Family Court relied on Family Court Act § 451 which provides that Family Court may not "reduce or annul child support arrears accrued prior to the making of an application pursuant to this section". Nevertheless, while it is technically true that granting petitioner the abatement he requests would result in a reduction of the arrears owed, we believe that this is one of the rare circumstances where an overstrict application of this statute would result in "grievous injustice" to a parent and a form of equitable estoppel should operate (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 451 [1993 Pocket Part], at 95; see, Matter of Commissioner of Social Servs. v Grant, 154 Misc 2d 571).

At the hearing, petitioner testified that after Dawn last came from Nebraska to visit him in New York in the summer

of 1987, their relationship became strained and there was very little communication between the two. Around this time communication from respondent also fell off for reasons not clear from the record. Petitioner continued regular conversations with Ryan in Nebraska, but no specific information was ever given about Dawn and he became suspicious as to what was going on in her life. At some point petitioner called Dawn's school in an attempt to gain more information and, when he finally found out that she had left school and moved out of respondent's residence, he commenced the subject proceeding. Respondent admitted on the stand that she had tremendous problems with Dawn which resulted in Dawn's being placed in foster care from September or October 1987 until June 1988. Dawn then moved out of respondent's house and obtained full-time employment from November 1988 until November 1989. When questioned as to whether she apprised petitioner of this situation, respondent said she seldom spoke to petitioner but if he had come right out and asked her if Dawn had moved out she would have told him. When asked whether she told Ryan not to tell petitioner about Dawn's situation, she responded that she told Ryan that if petitioner asked him about Dawn, Ryan was only to tell petitioner to call respondent about the issue and not to discuss it himself. While the issue of how affirmatively misleading respondent's attempts to keep this information from petitioner were is a close one, the fact remains that petitioner, who was at an obvious disadvantage with respect to Dawn due to the fact that they lived in different States, was kept in the dark about information he should have been privy to, and that respondent received child support payments that she was not entitled to. Respondent's reasons for not telling petitioner about Dawn are not persuasive and her statement that she would have told him the truth if he had asked her is disingenuous at best. For these reasons, we find it inequitable to hold petitioner responsible for payments for a time period when the truth was not made known to him and he was, therefore, unable to bring on an earlier petition.

Next, we reject petitioner's argument that Family Court's finding that he willfully violated prior support orders is erroneous. It is settled that the "failure to pay support, as ordered, shall constitute prima facie evidence of a willful violation" (Family Ct Act § 454 [3] [a]). In order to have willfully violated an order, however, the parent must have had the ability to pay (see, e.g., Matter of Dickstein v Dickstein, 99 AD2d 929; Matter of McCarthy v Spearman, 96 AD2d 750). In this case,

although petitioner testified that he injured his back at his former job and had to miss quite a bit of work, he also admitted that he used his available funds, including the workers' compensation benefits he received, to pay bills other than his child support obligation which he let fall into arrears. Moreover, petitioner also testified that in August 1988 he opened a small deli-bakeshop with his current wife. Petitioner stated that although he owned the business equally with his wife and he worked 40 to 50 hours a week there, only his wife drew a salary from the business in 1989. In light of this information, we conclude that Family Court was justified in discounting petitioner's claim that he was unable to pay support due to his alleged disability and inability to earn sufficient income (see, Matter of Van Demark v Van Demark, 144 AD2d 862, 863; Matter of Porcelain v Porcelain, 143 AD2d 834, 835; Matter of Department of Social Servs. v Hillock, 96 AD2d 625). Moreover, there is sufficient evidence to support a finding of willful violation (see, Matter of Hoyt v Hoyt, 166 AD2d 816, 817).

Finally, we have considered petitioner's remaining contention on appeal and we agree that Family Court's decision to grant an upward modification of petitioner's support obligation was an improvident exercise of its discretion. Even assuming that petitioner's yearly income should be considered to be the same as it was prior to the time he injured himself and lost his former job, the fact remains that the upward modification should have been denied based upon the failure of respondent's proof supporting her claim that a change in circumstances warranting an upward modification occurred here (see, Matter of Rogers v Bittner, 181 AD2d 990). The Hearing Examiner appeared to be greatly impressed by respondent's testimony concerning extraordinary dental expenses for Ryan and increased medical costs incurred by Dawn's petit mal epilepsy. However, because it was determined in another part of the order that petitioner would pay 45% of applicable "uninsured medical, dental, optical and prescription drug expenses" for the children, information as to these expenses was not really relevant to the issue of upward support. The only other information relied on by respondent was her statement that she bought a car for Dawn for unspecified reasons and paid some of her daughter's bills while she was living away from home and working different jobs. Respondent also testified that her food bill has doubled because Dawn and Ryan are "big eaters". In our view, such conclusory assertions unsupported by any supporting proof of necessity are insuffi-

cient to support an upward modification of support in this case especially where the record indicates that respondent earns more money than petitioner and her income has been steadily increasing.

Weiss, P. J., Yesawich Jr., Mahoney and Casey, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as granted an upward modification of petitioner's support obligation and granted petitioner an abatement from the time the petition was filed; matter remitted to the Family Court of Albany County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.