*250 OPINION OF THE COURT
Judith J. Gische, J.
The issues before the court on this motion are plaintiff’s requests for a judgment, modification of child support, health insurance coverage and attorney’s fees.
FACTS
The parties were divorced on June 2, 1992. The divorce judgment incorporated but did not merge the terms of a stipulation of settlement dated January 10, 1992 (agreement). Pursuant to the agreement, plaintiff was given custody of their child S., now age six, and awarded child support in the amount of $50 weekly while the defendant was unemployed and $100 once he became employed. Defendant was reemployed by Metro North in April 1993 when he was recalled to active service after an unpaid furlough.*
After his reemployment defendant continued to pay only $50 per week as child support. In September 1995, however, defendant began paying additional sums toward S.’s parochial school education. This cost averages approximately $85 per month. Defendant claims that before 1995 plaintiff never asked for the increased support due under the separation agreement. Defendant further claims that in the spring of 1995 the parties agreed that defendant would pay one half of the tuition of catholic school for S. and that "these payments would be applied to [defendant’s] support obligations.” Plaintiff denies that any such agreement was made.
DISCUSSION
In the recent Court of Appeals decision in Matter of Dox v Tynon (90 NY2d 166 [1997]) it was held that a custodial parent cannot implicitly waive the payment of child support due pursuant to a court order. The Court held that a custodial parent’s conduct in failing to insist on compliance with a court order of child support was not a waiver of that support obligation. The Court, however, expressly recognized that not before it and not resolved was the issue of whether the parties could reach an express agreement altering child support obligations contained in a court order. (90 NY2d, at 175; see also, Felder, 'Dox v. Tynon’ and Issues of Waiver, NYLJ, Aug. 11, 1997, at 3, col 1.) *251 At bar, relief related to the child support arrears accruing prior to September 1995 is controlled by the authority of Dox v Tynon. Relief related to post-September 1995 arrears requires this court to resolve the issue expressly left open by Dox v Tynon.
Defendant’s defense to the entry of a judgment for arrears that came due under the court-ordered agreement after September 1995 is that the parties entered into a subsequent agreement modifying the payment of support. Defendant claims that the parties made a verbal, out-of-court agreement. Defendant’s description of the agreement reveals that the parties were not represented by counsel and the terms of the agreement were never reviewed by any court at or about the time the agreement was made.
Before any hearing is held on the dispute regarding whether any such verbal agreement was made, the court must first decide if defendant’s claim of a verbal agreement is sufficient to relieve him of his obligation to pay child support under the court’s prior order fixing the level of support. Squarely put, the issue is whether, as a matter of law, the parties can enter into an out-of-court oral agreement to modify or waive child support obligations previously fixed by the court.
Until 1986, child support and other types of arrears, including spousal maintenance, were treated similarly. (Dox v Tynon, supra, at 172.) Before 1986 the courts permitted the parties to both implicitly and expressly waive the right to collect both child support and spousal support due under court orders. (See, Axelrad v Axelrad, 285 App Div 903 [2d Dept 1955] [express waiver]; Matter of Robinson v Robinson, 81 AD2d 1028 [4th Dept 1981] [implicit waiver].) In Axelrad (supra), the Court recognized that such waiver was consistent with the general common law which permits a party to waive rights under a contract or decree " 'when there is no law preventing waiver’ ”, (285 App Div, at 904.)
Beginning in 1986, however, there were major legislative initiatives which completely changed the way in which the courts now address issues of child support. This court needs to analyze whether the new laws prohibit or in any way limit waiver permitted under old common law.
Significantly, the new laws emphasize the differences between child support and spousal maintenance and the need for the courts to address these issues separately. Thus, for example, in 1986 the Legislature amended the Domestic Relations Law and Family Court Act to provide that the court could *252 not retroactively reduce or cancel child support. (L 1986, ch 892, §§ 8, 24.) In contrast spousal maintenance arrears may be modified or annulled upon a proper showing. (Domestic Relations Law § 236 [B] [9] Db].)
More dramatically, in 1989 the Legislature enacted the Child Support Standards Act (CSSA). The new law provided sweeping new procedures for the determination of child support. The legislation adopted guidelines which established minimum and meaningful standards to determine parental support obligations of both the noncustodial and custodial parent. (Scheinkman, 1989 Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C240:27, 1997 Supp Pamph, at 388.) The numerical formulas in the statute present a far different method of evaluating child support from that used to determine spousal maintenance. (Domestic Relations Law § 236 [B] [6].)
As originally enacted the CSSA permitted the parties to enter into voluntary agreements with respect to fixing child support. The law permitted the parties to "opt out” of the guidelines as long as the decision to deviate was made knowingly. A finding that either party was unaware of the CSSA would invalidate any agreement that did not comply with its mandates. (Sloam v Sloam, 185 AD2d 808 [2d Dept 1992].)
In 1992 the CSSA was amended to provide further safeguards ensuring that any waiver of the application of child support guidelines is made knowingly by the parties and is fair to the child for whom the support is awarded. The law now provides that where the parties enter into an agreement deviating from the child support guidelines, not only must they know about the CSSA, but there must be an actual calculation of the amount of support that strict application of the guidelines would yield and the reasons for not providing that amount. Moreover any court order incorporating an agreement by the parties which deviates from the guidelines must set forth the reasons for the deviation. The pertinent provisions of the CSSA are as follows (Domestic Relations Law § 240 [1-b] [h]): "A validly executed agreement or stipulation voluntarily entered into between the parties after the effective date of this subdivision presented to the court for incorporation in an order or judgment shall include a provision stating that the parties have been advised of the provisions of this subdivision, and that the basic child support obligation provided for therein would presumptively result in the correct amount of child support to be awarded. In the event that such agreement or stipu *253 lation deviates from the basic child support obligation, the agreement or stipulation must specify the amount that such basic child support obligation would have been and the reason or reasons that such agreement or stipulation does not provide for payment of that amount. Such provision may not be waived by either party or counsel. Nothing contained in this subdivision shall be construed to alter the rights of the parties to voluntarily enter into validly executed agreements or stipulations which deviate from the basic child support obligation provided such agreements or stipulations comply with the provisions of this paragraph. The court shall, however, retain discretion with respect to child support pursuant to this section. Any court order or judgment incorporating a validly executed agreement or stipulation which deviates from the basic child support obligation shall set forth the courts reasons for such deviation.”
The out-of-court agreement alleged by defendant to exist contained none of the safeguards that are now required by the CSSA. There is no indication that at the time the agreement was made the parties calculated, considered and then decided to deviate from the basic support guidelines. There is no indication that the parties developed reasons why any deviation should be acceptable under these circumstances. Moreover there was no judicial oversight at or near the time the agreement was made to ensure that the reasons for deviation from the basic support obligation were fair to the child. This court holds that because the alleged waiver agreement does not comply with the formal requirements of the CSSA it is not valid or enforceable to the extent it reduces basic child support as determined by prior court order.
The court recognizes that Domestic Relations Law § 240 (1-b) (h) concerns only those circumstances where the court is called upon to incorporate the parties’ agreement regarding child support into a court order. The standard, however, should be no different, where as here, a party seeks to have the court enforce an agreement between the parties concerning child support. To permit the parties to modify court-ordered child support through out-of-court agreements not otherwise made in compliance with CSSA formalities would undermine the salutary goal of the child support laws to insure that each parent fulfills, to the extent of their means, basic obligations of financial support for their children.
Defendant’s reliance on Matter of Cox v Cox (181 AD2d 201 [3d Dept 1992]) is misplaced. Cox concerned issues of spousal *254 maintenance. As previously discussed, since 1986 child support and spousal support have been treated differently. Moreover, the right to maintenance belongs to the parties. They have broad discretion to fashion the parameters of those rights between them. The rights of children to parental support, however, belong to the children and not the parties. Parents are not free to contract away the child’s rights of support and a child is not bound by the terms of any agreement. (Matter of Boden v Boden, 42 NY2d 210 [1977]; Strenge v Bearman, 228 AD2d 664 [2d Dept 1996].)
OFFSETS FOR MONEY PAID
Defendant seeks offsets against child support arrears for monies actually expended for his daughter. In particular he claims that he is entitled to credit for the monies he paid for his daughter’s school tuition. He also seeks credit for $1,500 he personally paid for his daughter’s clothing since 1994.
Defendant’s application to have the court credit payments for private school tuition toward arrears in child support is denied. Under the CSSA the initial calculation of child support for basic needs does not include private school tuition. Private school tuition is considered an "add on” expense, which, if otherwise appropriate, is to be paid over and above the basic allowance. (Matter of Cohen v Rosen, 207 AD2d 155 [3d Dept 1995].) Any credit of a payment for an "add on” expense would reduce the basic allowance intended to cover the child’s day-today needs. This type of crediting would undermine the purpose of the CSSA.
Defendant’s application to have the payments for clothing offset against the arrears is also denied. While clothing is something that would ordinarily be part of basic support, husband voluntarily made clothing purchases for the benefit of the child. There is no proof that these purchases were made with any expectation of reimbursement. Defendant is not entitled to a credit for voluntary payments made on behalf of a child. (Mayeri v Mayeri, 220 AD2d 647 [2d Dept 1995].)
CONCLUSION
In accordance with the above decision this court: (a) grants plaintiff’s motion for a final judgment in the amount of $11,200, representing support arrears from April 23, 1993 to July 18, 1997.
[Portions of opinion omitted for purposes of publication.]

 Although plaintiff originally claimed that defendant became reemployed April 1992, she appears to accept, in her reply papers, defendant’s statement that his actual date of reemployment was April 1993.