OPINION OF THE COURT
Sarah L. Krauss, J.
Background
The plaintiff and the decedent, Malka N. Dembitzer, were divorced by judgment dated February 24, 2004 and entered March 8, 2004. The divorce judgment ordered, inter alia, for the sale of the marital home, and for the payment of marital debts from the proceeds of the sale with the remainder of the proceeds to be divided evenly between the parties. The judgment further ordered the plaintiff noncustodial parent to pay child support for the three minor children in the amount of $548 per week retroactive to June 5, 2001, the date of the decedent’s application for child support. The order failed to specify the amount of retroactive child support. In addition, the plaintiff was ordered to pay 100% of the child care costs incurred by the decedent. On February 15, 2001 Justice Barbara Panepinto issued an order, pendente lite, which required the plaintiff to pay $150 per week in child support and to continue paying for the child care expense of maintaining the parties’ babysitter. In a proceeding approximately one week later the child support amount was increased to $160 per week.
Following the entry of judgment the decedent moved to have certain marital debts satisfied from the proceeds of the sale of the marital residence and to have retroactive child support fixed at $58,126. On March 22, 2004, the parties’ children came to reside with the plaintiff because the decedent, who had been ill, had become hospitalized. By order dated May 28, 2004, Justice Betsy Barros suspended the plaintiffs child support obligations, effective May 31, 2004, because he had continued to care for the children since March 22, 2004 due to their mother’s illness. The order further stated that the plaintiff would be responsible for child support up to May 31, 2004. By separate order dated May 28, 2004, Justice Betsy Barros referred the two financial issues *685 to Judicial Hearing Officer (JHO) Leah Marks to hear and report. Following the decedent’s death on August 2, 2004, her executrix was substituted as the defendant. A hearing was held before JHO Marks on November 17, 2004. JHO Marks issued a report on or about January 12, 2005.
In the report JHO Marks rendered the following recommendations:
(1) that seven enumerated items of marital debt be satisfied from the proceeds of the sale of the marital residence;
(2) that the plaintiff should be credited with $38,250 he paid for child care pursuant to a pendente lite order dated February 15, 2001, and therefore his child support arrears should be reduced from $58,126 to $19,876; and
(3) that the defendant should be directed to bear the cost of obtaining and filing the transcript of the hearing.
The defendant now moves, pursuant to CPLR 4403, to confirm that aspect of the report which enumerated the items of marital debt to be satisfied from the proceeds of the sale of the marital residence. The defendant further moves to reject the remainder of the report which credited the plaintiff with payments made for child care pursuant to the pendente lite order dated February 15, 2001 and which directed defendant to bear the cost of obtaining and filing the transcript of the hearing. The plaintiff has cross-moved to confirm all aspects of the JHO’s report.[1]
Legal Analysis
Sale of Marital Property and Payment of Debts
Both parties have moved to confirm that aspect of the JHO’s report which enumerated the items of marital debt to be satisfied from the proceeds of the sale of the marital residence. Accordingly, that part of the report is confirmed without objection.
Child Support Arrears
The defendant argues that child support arrears should be calculated at $58,126. According to the judgment of divorce dated February 24, 2004, the plaintiff was ordered to pay child support in the amount of $548 per week retroactive to June 5, 2001. There is no dispute that the period between June 5, 2001 *686 and May 31, 2004 (when child support was suspended) totaled 153 weeks. It is further undisputed that the plaintiff paid one week’s full child support of $548 and for the remaining 152 weeks made payments of $160 per week, pursuant to the pendente lite order, together with an overpayment of $850. Both parties agree that the plaintiff should be credited for the child support payments made under the pendente lite order, as well as the $850 overpayment. When those credits are taken into account, the plaintiffs child support arrears should amount to $58,126.[2] It is this amount that the defendant seeks to establish as the plaintiffs child support arrears.
The plaintiff, however, claims that he is entitled to a credit for $38,250 in payments he made for child care in order to employ the family’s babysitter pursuant to the pendente lite order of February 15, 2001. In the transcript of the hearing before JHO Marks on November 17, 2004, JHO Marks stated that those child care bills would not be subtracted from child support (transcript of Nov. 17, 2004 hearing, at 78, lines 18-22). However, in the report dated January 12, 2005, JHO Marks recommended crediting the plaintiff with the child care expenses and thereby reducing the child support arrears from $58,126 to $19,876. It appears that JHO Marks’ recommendation was motivated by a concern that a judgment for child support arrears in the amount of $58,126 to the decedent’s estate might not benefit the children. There was no evidence presented at the hearing before JHO Marks that such a judgment would be available to the children. In fact, the executrix did not appear at the hearing which was conducted in her absence.
It is undisputed that the amount of retroactive child support ordered under the judgment of divorce is $58,126 inclusive of all credits for payment of temporary child support, except for past child care payments. Although the plaintiff argues that he should be credited with the amounts he payed for child care pursuant to the pendente lite order, it is obvious that the decision after trial of the Honorable Mary Ellen Fitzmaurice, dated December 11, 2003, does not specifically credit the plaintiff with any prior child support payments. Moreover, the divorce judgment is silent with respect to any credits for past payments of temporary support. Although the parties agree that the plaintiff should be credited with the $160 weekly child support payments made pursuant to the pendente lite order, the parties disagree *687 over whether the separate child care payments for the family’s babysitter should be considered child support for which the plaintiff should also be awarded a credit.
Retroactively awarded child support arrears can be offset by certain payments which include prior child support payments, carrying charges to the marital residence,[3] and other payments which provide for the daily needs of the child and would be duplicative of basic child support (such as room and board while the child is away at school). (See, e.g., Miller v Miller, 299 AD2d 463 [2d Dept 2002].) Payments for child care, however, are considered “add-on” expenses that are determined separately from the basic child support calculation and, if considered appropriate, are to be paid over and above the basic allowance. (See, Domestic Relations Law § 240 [1-b] [c].) Accordingly, it is this court’s opinion that any credit for the payment of an “add on” expense would reduce the basic allowance intended to cover the child’s daily needs and undermine the purpose of the Child Support Standards Act (CSSA) (L 1989, ch 567). (See, Sheridan v Sheridan, 174 Misc 2d 249 [Sup Ct, Bronx County 1997, Gische, J.] [defendant’s application to have the court credit payments for private school tuition toward arrears in child support was denied since under the CSSA, private school tuition is considered an “add-on” expense which is considered separately from the initial calculation of child support for basic needs].)
The plaintiff alternately argues that the child care was improperly awarded pursuant to the pendente lite award because the decedent was not engaged in any of the activities set forth in Domestic Relations Law § 240 (1-b) (c) (4), (6) (i.e., attending school, receiving training, seeking employment, or working). This argument is without merit. If the plaintiff felt that child care were improperly awarded his remedy would have been to make a motion to reargue the court’s pendente lite decision or to take an appeal. (See, Shanon v Patterson, 294 AD2d 485 [2d Dept 2002].)
Any disagreement, however, with the decision and judgment of the Honorable Mary Ellen Fitzmaurice with respect to any credits the plaintiff feels he should have received could only be *688 resolved either by a posttrial motion or an appeal.[4] This court cannot act as an appellate court to review the propriety of the decision and judgment of a court of coordinate jurisdiction.
Nevertheless, this court has serious reservations regarding the propriety of awarding Mrs. Dembitzer’s estate with a judgment of child support arrears in the amount of $58,126. Child support is intended to provide for a child’s day-to-day needs and expenses. Given that the children in this case are now in their father’s custody, this court is concerned that a judgment for child support arrears to the mother’s estate will only serve to reduce funds available for the children’s current support with no guarantee that these funds will ever become available to them. This certainly could not have been the intention of the children’s mother. Nor could it have been the intention of the New York State Legislature when it enacted the New York State Support Enforcement Acts of 1986 and 1987 (NYS-SEA).
The NYSSEA amended the Domestic Relations Law and the Family Court Act to prohibit courts from reducing or cancelling any child support arrears which have accrued. (Matter of Dox v Tynon, 90 NY2d 166 [1997]; Domestic Relations Law § 236 [B] [9] [b]; § 244; Family Ct Act §§ 451, 460 [l].)[5] The purpose of these revisions was to ensure that the parent obligated to pay child support pursuant to an order or judgment is “not financially rewarded for failing either to pay the order or to *689 seek its modification.” (Tynon at 173, quoting Governor’s Mem approving L 1986, ch 892, 1986 NY Legis Ann, at 361.)
Under ordinary circumstances, this court would be required to conclude that the plaintiff owed $58,126 in child support arrears pursuant to both the judgment of divorce and the agreement of the parties with respect to certain credits. However, this court finds that the facts of this case present conditions so extraordinary that compliance with the NYSSEA (specifically Domestic Relations Law § 236 [B] [9] [b]) would result in a “grievous injustice” to both the custodial parent and the children that the legislation was intended to protect. (See, Reynolds v Oster, 192 AD2d 794, 795 [3d Dept 1993]; Matter of Commissioner of Social Servs. v Grant, 154 Misc 2d 571 [Fam Ct, NY County 1992]; cf., Matter of Commissioner of Social Servs. [Rosa Lidia T.] v Luis Alonso G., 7 AD3d 388 [1st Dept 2004].)
Domestic Relations Law § 236 (B) (9) (b) provides that “[n]o modification or annulment shall reduce any arrears of child support which have accrued prior to the date of application to annul or modify any prior order or judgment as to child support.” The statute is meant to ensure that child support arrears can never be vacated and that those funds will always be available to the custodial parent for the children’s benefit.[6]
If Mrs. Dembitzer were still alive, as custodian she would obviously be entitled to a judgment for child support arrears.[7] In addition, Mrs. Dembitzer’s estate would also be entitled to maintain an action for child support arrears.[8] Such an action would certainly be warranted if the Dembitzer children were under the custodial care of someone other than their father. However, this is not the case before us. In this case, Mr. Dembitzer is the custodial parent and has been so since approximately four months prior to Mrs. Dembitzer’s death. Therefore, to divert financial resources from a custodial parent which are intended for the benefit of the children would be unconscionable and contrary to purpose of the statute.
“The strict adherence to the letter of a statute will not be permitted to defeat the general purpose and manifest policy *690 intended to be promoted, and a statute will not be construed to work an injustice or absurdity.” (Grant, 154 Misc 2d at 573-574, quoting Sinhogar v Parry, 98 Misc 2d 28, 35 [Sup Ct, NY County 1979].) “When the courts make an exception from the letter of a statute, because the subject excepted is not within its spirit and meaning, they do so to avoid a result so unreasonable or absurd as to force the conviction upon the mind that the excepted subject could not have been intended by the legislature.” (Id. at 574, quoting Morgan v Hedstrom, 164 NY 224, 230 [1900].)
Under what circumstances may a court justify a departure from the literal requirements of Domestic Relations Law § 236 (B) (9) (b)? Although there seem to be no reported decisions which consider this question in the context of Domestic Relations Law § 236 (B) (9) (b), several courts have analyzed the issue based upon its analogue, Family Ct Act § 451.
For example, in Grant, the respondent objected to a hearing examiner’s order for downward modification of support because it did not vacate his child support arrears which accrued while he was allegedly mentally disabled. The respondent argued that he was not competent to timely seek a modification of support and, therefore, his arrears should be forgiven. Although Family Ct Act § 451 prevents the Family Court from reducing or annulling child support which has accrued prior to a filing for modification, regardless of the reason for the delay, the court concluded that a departure from the literal interpretation of the statute may be warranted, under certain circumstances, to avoid an absurd result or a grievous injustice. The court ultimately decided that it had the authority to vacate child support arrears which had accrued if the respondent’s mental disability rendered it impossible for him to both pay child support and timely move for relief from the order.
Oster also involved an exception to the literal requirements of Family Ct Act § 451. In that case the petitioner, who was the noncustodial father, objected to the Family Court’s order which, inter alia, refused to abate child support arrears which had accrued prior to the filing of a petition for downward modification. The petitioner in Oster argued that he failed to make a timely application for downward modification because the custodial mother never informed him that their child had actually become emancipated. On appeal, the Third Department held that the situation presented one of those “rare circumstances where an overstrict application of [Family Ct Act § 451] *691 would result in a ‘grievous injustice’ and a form of equitable estoppel should operate.” (Oster, 192 AD2d at 795.) Accordingly, it reversed the order of the Family Court and concluded that the petitioner was entitled to an abatement of child support arrears from the time the petitioner’s child was actually emancipated.
In Alonso, the Family Court departed from Family Ct Act § 451 and reduced the respondent’s child support arrears based upon his claimed inability to appear in court by himself. The First Department reversed and held that, unlike in Grant, there was no evidence that it was impossible for the respondent to pay child support or more timely move for relief from his obligation. However, the Court left open the possibility that there could be “rare circumstances where an overly strict application of [Family Ct Act § 451], which prohibits retroactive reduction of accrued child support arrears, would result in ‘grievous injustice’ to respondent.” (Alonso, 7 AD3d at 388.)
Although the Court of Appeals has noted that “[n]o excuses at all are tolerated with respect to child support. . . Child support arrears must be awarded in full, regardless of whether the defaulter has good cause for having failed to seek modification prior to their accumulation” (Tynon, 90 NY2d at 173-174 [citations omitted]), the Court has never addressed whether or not circumstances, which might result in an “absurd result” or a “grievous injustice,” could warrant a departure from the literal interpretation of Domestic Relations Law § 236 (B) (9) (b) and Family Ct Act § 451. Moreover, the Court has specifically been confronted with, but left unresolved, whether certain defenses such as express waiver (Tynon at 175), laches or equitable estoppel (Szigyarto v Szigyarto, 64 NY2d 275, 280 [1985]) could defeat a claim for child support.
The facts of the case presently before this court present a novel question for which there is no authority directly on point within New York. However, in an action involving similar facts, an Ohio appellate court in Miller v McMichael (2003 WL 22939494, 2003 Ohio App LEXIS 6081 [Ohio Ct App, 3d Dist, Dec. 15, 2003]) determined that a reduction of support arrears could be warranted. McMichael involved an action by the estate of the decedent mother to collect child support arrears owed by the father, who became the custodial parent after the mother’s death. The juvenile court had originally determined that the child support arrears were not an asset of the decedent’s estate. On appeal, the Ohio appellate court determined that the lower *692 court was without jurisdiction to make such a determination but remanded the matter for it to consider whether, under the circumstances, it would serve the best interests of the child to reduce the support arrears to a judgment which ultimately might not be available for the benefit of the child. In so holding the court noted that “[jjust as the purpose of ordering child support is to protect and serve the child’s best interests, the court’s purpose in reducing arrearages to judgment must also be to serve and protect the best interests of the child.” (McMichael, 2003 WL 22939494, at *3, 2003 Ohio App LEXIS 6081, at *10.)
In light of the foregoing, this court finds that the particular facts of this case represent the type of “rare circumstances where an overstrict application of [Domestic Relations Law § 236 (B) (9) (b)] would result in a ‘grievous injustice.’ ” (Oster, 192 AD2d at 795.) It would not be in the best interests of the children to have their father’s child support arrears reduced to a judgment payable to their mother’s estate. The satisfaction of such a judgment would necessarily reduce Mr. Dembitzer’s ability to provide support to his three minor children. At best, if a judgment for child support arrears collected by the estate were subsequently available as a distribution to the Dembitzer children, it seems that Mr. Dembitzer would ultimately be doing nothing more than paying himself back for the support of those children. At worst, assuming that the Dembitzer children are indeed beneficiaries of their mother’s estate,[9] the judgment amount could potentially be reduced by administrative fees, creditor’s claims,[10] or payments to other beneficiaries of the estate.
*693 Accordingly, this court rejects that aspect of the JHO’s report which reduced the child support arrears from $58,126 to $19,876 to reflect a credit for prior child care payments and finds, instead, that the total amount of arrears should be vacated.
Payment of Hearing Transcript
The defendant has moved to have this court reject that part of the JHO’s report which directed that the cost of procuring the transcript of the hearing, which amounted to $490, be paid by the defendant. The plaintiff opposes and moves to confirm that part of the JHO’s report.
Pursuant to Uniform Rules for New York State Trial Courts (22 NYCRR) § 202.44, the costs of a motion to confirm or reject the report of a JHO shall be borne by the parties pro rata. The estate of Mrs. Dembitzer is presently without assets and awaits sale of the marital home to fund the estate. Accordingly, this court rejects the recommendation of the report that the defendant bear the entire cost of the hearing transcript and orders the plaintiff to reimburse the defendant for 50% of the transcript’s cost.

. Although the plaintiff argues that his child support arrears should be further reduced by $850 to reflect a credit for overpayment, it appears that JHO Marks credited the plaintiff with that amount when she determined that the unpaid child support ordered under the judgment of divorce amounted to $58,126 up to May 31, 2004.

. $548 - $160 = $388. $388 x 152 weeks = $58,976. $58,976 - $850 = $58,126.

. Although the plaintiff has apparently paid all the carrying charges on the marital home, which amounted to $3,000 per month, from the commencement of the divorce proceedings to present, it does not appear that he has ever argued for a credit toward child support arrears based upon those payments.

. This court notes that a notice of appeal from the divorce judgment was filed on March 17, 2004. It is unclear whether the appeal was ever perfected.

. Domestic Relations Law § 236 (B) (9) (b) provides that “no modification or annulment shall reduce any arrears of child support which have accrued prior to the date of application to annul or modify any prior order or judgment as to child support.”
Domestic Relations Law § 244 provides that “[u]pon application the court shall make an order directing the entry of judgment for the amount of arrears of child support together with costs and disbursements.”
Family Ct Act § 451 provides that “[t]he [family] court has continuing jurisdiction over any support proceedings brought under this article until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding, provided, however, that the modification, set aside or vacatur shall not reduce or annul child support arrears accrued prior to the making of an application pursuant to this section.”
Family Ct Act § 460 (1) provides that “[w]here the family court enters an order ... for the support of . . . [a] child . . . and the party defaults in paying any sum of money due as required by the order . . . the court, without regard to the amount due, shall make an order directing the entry of judgment for the amount of child arrears, together with costs and disbursements.”

. An action to enforce a judgment of support or maintenance is, of course, subject to a 20-year statute of limitations. (CPLR 211 [e].)

. Domestic Relations Law § 236 (B) (9) (b); § 244.

. Estates, Powers and Trusts Law § 11-3.1 provides that “[a]ny action . . . may be maintained by and against a personal representative in all cases and in such manner as such action might have been maintained by or against his decedent.”

. Although this court has no information concerning the contents of Mrs. Dembitzer’s last will and testament, Mr. Dembitzer seems to believe that it provides for funds to be available for the children when they reach the age of 21 years. (Transcript of Nov. 17, 2004 hearing at 80-81.) Any provision in Mrs. Dembitzer’s will which creates a testamentary trust for the children’s future benefit is certainly laudable. However, any such trust should be funded with estate assets other than child support arrears which should be used for the support of the children before they reach the age of 21.

. The judgment of divorce provides that Mrs. Dembitzer will be responsible for expenses she incurred for a surgery she underwent after the action was commenced. The judgment further directs each party to contribute 50% of the law guardian fees and holds each party responsible for their own legal fees. While the debt, if any, owed by Mrs. Dembitzer’s estate for the payment of legal fees is unknown, there is currently a potential claim against the estate in the amount of $41,000 for the costs of Mrs. Dembitzer’s surgery (transcript of Nov. 17, 2004 hearing at 74-76).